**IN THE UNITED STATES DISCRICT COURT OF NEW JERSEY**

| | |
|---|---|
| OKLEGAL.COM, A DELAWARE CORPORATION<br><br>Plaintiff(s),<br><br>v.<br><br>META PLATFORMS, INC., F/KA FACEBOOK, INC., and MARK ZUCKERBURG<br><br>Defendant(s) | **COMPLAINT FOR:**<br><br>**FIRST AMENDMENT VIOLATIONS RESULTING IN TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP**<br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT FOR INJUCTIVE AND DECLARATORY RELIEF

### INTRODUCTION

1. Plaintiff, OKLEGAL.COM, A DELAWARE CORPORATION, ("Plaintiff"), brings this action against Defendant Meta Platforms, Inc., f/k/a Facebook, Inc., ("Meta") and its Chief Executive Officer, Defendant Mark Zuckerberg, individually. The allegations herein of Plaintiff are based upon personal knowledge and belief as to their own acts, and upon the investigation of their counsel, and upon information and belief as to all other matters.

2. As stated in its Community Standards, Defendant Meta promotes itself as a service for people "to talk openly about the issues that matter to them, even if some may disagree or find them objectionable." Defendant Meta's power and influence are immense. It currently boasts close to three (3) billion registered Users worldwide and over 124 million Users in the United States.

3. On March 26, 2025, Defendants indefinitely banned Plaintiff for exercising his right to promote his business on the Meta platform.

4. Defendants extended their conditional and unconditional with respect to restraint of Plaintiff's right to free speech as a private citizen until at least March of 2025.

5. Plaintiff, an Attorney and corporation in good standing with multiple jurisdictions including the Supreme Court of the United States, was banned by the Defendants, using non-existent and/or broad, vague, and ever-shifting standards.

6. Meta declared Plaintiff's use of Meta violated it's self-imposed "Community Standards." Countless other Meta Users have not been as fortunate, with Meta taking detrimental action against their account with no explanation whatsoever.

7. Plaintiff respectfully asks this Court to declare that the Defendant's actions directed at the Plaintiff are a restraint on their First Amendment right to free speech, to order the Defendants to restore the Meta account of Plaintiff, and prohibit Defendants from exercising censorship, editorial control or prior restraint in its many forms over the posts of Plaintiff, Steven P. Haddad.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 1332, 28 U.S.C. § § 2201-2202, and the Constitution of the United States for the unconstitutional violation of the First Amendment right to free speech as pleaded below.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), (d), and (e)(1). A substantial part of the event giving rise to this claim occurred in this District, and Plaintiff brings this suit for actions taken by Defendants that occurred while Plaintiff was serving in his official capacity as an Attorney for the State of New Jersey.

## PARTIES

### Plaintiff

11. Plaintiff, a Delaware Corporation, is also the owner and operator of the The Haddad Law Firm, P.C. (the "Firm").

### Defendants

12. Defendant Meta is a foreign corporation with a principal place of business at 1601 Willow Road, Menlo Park, California, and conducts business in the State of New Jersey, throughout the United States, and internationally. Meta has forty-one (41) offices in the United States and forty-five (45) offices located worldwide.

13. Defendant Mark Zuckerberg ("Zuckerberg"), is the Chairman and Chief Executive Office of Meta. Zuckerberg owns a controlling interest in Meta's stock, and upon information and belief, resides in Palo Alto, California.

## STATEMENT OF FACTS

### 1. DEFENDANTS META AN ZUCKERBERG

### A. Defendant Meta

14. The United States Supreme Court has recognized that social media platforms such as Facebook provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730. These platforms have been revolution[ary]," not least because they have transformed civic engagement by allowing elected officials to communicate instantaneously and directly with their constituents. *Id.* Facebook enables ordinary citizens to speak directly to public officials and listen to and debate others about public issues, in much the same way they could if gathered on a sidewalk or in a public park or city council meeting or town hall.

15. In 2007, Meta f/k/a Facebook launched the Facebook platform, which allowed for the integration of third-party applications, known as "Apps," and for the website to be integrated into the larger world wide web through search-engine indexing.

16. Meta f/k/a Facebook actively encourages Users to express their ideas and communicate via its platform in the forms of comments and "likes" on postings. While encouraging extensive User engagement, Meta f/k/a Facebook also collects massive amounts of its Users' data to sell to advertisers.

17. As a social media conglomerate, Meta allows Users to publish personal pages with personal message postings, links to news articles, videos, photographs, and to publicly interact with other Users through speech. The speech posted on Meta pages ranges from Users' mundane musings on everyday life to the most important new topics of the day, including political speech.

18. In accordance with its Terms of Service ("TOS"), a Meta "User" is an individual who is permitted to create an account on its platform in accordance with its TOS. A User can post on their "wall," a type of message board, a variety of speech, including their own commentary, videos, photographs, and links to news articles. Other Users can view, share and comment on the content on the User's wall. Users rate other Users' content and speech by giving it "likes." Users also can send messages directly to each other and are updated by postings within their network of friends. By communicating with each other, Users create valuable communications that may become newsworthy.

19. Meta created a Newsfeed for its Users to offer selective postings, news articles, and targeted advertisements that it determines a User may like, depending n the personal information and history of that User. Meta determines which posts and advertisements

appear on a User's Newsfeed by using an algorithm, which creates a ranking system that predicts which posts will be most valuable and meaningful to an individual.

20.     Meta engages in targeted censorship decisions by using both algorithms and employees (referred to as "content moderators") utilizing an internal tool developed by Meta called TASKS.

21.     Meta content moderators use TASKS to entertain censorship suggestions from employees. Meta f/k/a Facebook content moderators then often consult with their peers at other similarly situated social media platforms in deciding who, or what, to censor.

22.     Meta and Twitter Inc. employees often coordinate their censorship efforts, which are authorized and immunized by Section 230.  A recent review of domain names on Meta TASKS platform referred to Twitter domain names, as well as particular phrases, words, or individuals both Meta and Twitter were considering censoring, or ultimately did censor.

## COUNT ONE

## VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

23.     Plaintiff restates the allegations set forth in paragraphs 1-22.

24.     Using its authority under Section 230 together and in concert with other social media companies, the Defendants regulate the content of speech over a vast swath of the Internet.

25.     Defendants are vulnerable to and react to coercive pressure from the federal government to regulate specific speech.

26.     In censoring the specific speech at issue in this lawsuit and deplatforming Plaintiff, Defendants were acting outside of the laws of free speech.

27. As such, Defendants' censorship activities amount to state action.

28. Defendants' censoring the Plaintiff's Meta account violates the First Amendment to the United States Constitution because it eliminates the Plaintiff's participation in a public forum and the right to communicate to others their content and point of view.

29. Defendants' censoring of the Plaintiff from their Meta accounts violates the First Amendment because it imposes viewpoint and content based restrictions on the Plaintiffs' access to information, views, and content otherwise available to the general public.

30. Defendants' censoring of the Plaintiff violates the First Amendment because it imposes a prior restraint on free speech and has a chilling effect on social media Users and non-Users alike.

31. Defendants' blocking of the Individual from their Meta accounts violates the First Amendment because it imposes a viewpoint and content-based restriction on the Plaintiff's ability to petition the government for redress of grievances.

32. Defendants' censorship of the Plaintiff from their Meta accounts violates the First Amendment because it imposes a viewpoint and content based restriction on their ability to speak and the public's right to hear and respond.

33. Defendants' blocking the Plaintiff from their Meta accounts violates their First Amendment rights to free speech.

34. Defendants' censoring of Plaintiff by banning Plaintiff from his Meta account while exercising his free speech as President of the United States was an egregious violation of the First Amendment.

35.     Defendant Zuckerberg is sued in his personal capacity and is liable in damages because he was personally responsible for Meta's unconstitutional censorship of Plaintiff, including Meta's deplatforming of Plaintiff.

36.     Zuckerberg is also sued in his official capacity, along with Meta itself, for injunctive relief to and the unconstitutional censorship of the Plaintiff and Putative Class Members, including Meta's deplatforming of Plaintiff and other Putative Class Members.

## COUNT TWO

## DECLARATORY JUDGEMENT OF UNCONSTITUTIONALITY OF SECTION 230 AND THE COMMUNICATIONS DECENCY ACT

37.     Plaintiff restates the allegations set forth in 1-36.

38.     In censoring (flagging, shadow banning, etc.) Plaintiff, Defendants relied upon and acted pursuant to Section 230 of the Communications Decency Act.

39.     Defendants would not have deplatformed Plaintiff.

40.     Section 230(c)(2) purports to immunize social media companies from liability for action taken by them to block, restrict, or refuse to carry "objectionable" speech even if that speech is "constitutionally protected." 47 U.S.C. § 230(c)(2).

41.     In addition, Section 230(c)(1) also has been interpreted as furnishing an additional immunity to social media companies for action taken by them to block, restrict, or refuse to carry constitutionally protected speech.

42.     Section 230(c)(1) and 230(c)(2) were deliberately enacted by Congress to induce, encourage, and promote social medial companies to accomplish an objective— the censorship of supposedly "objectionable" but constitutionally protected speech on the Internet—that Congress could not constitutionally accomplish itself.

43.     Congress cannot lawfully induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 US 455, 465 (1973).

44.     Section 230(c)(2) is therefore unconstitutional on its face, and Section 230(c)(1) is likewise unconstitutional insofar as it has interpreted to immunize social media companies for action they take to censor constitutionally protected speech.

45.     Section 230(c)(2) on its face, as well as Section 230(c)(1) when interpreted as described above, are also subject to heightened First Amendment scrutiny as content- and viewpoint-based regulations authorizing and encouraging large social media companies to censor constitutionally protected speech on the basis of its supposedly objectionable content and viewpoint. *See Denver Area Educational Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727 (1996).

46.     Such heightened scrutiny cannot be satisfied here because Section 230 is not narrowly tailored, but rather a blank check issued to private companies holding unprecedented power over the content of public discourse to censor constitutionally protected speech with impunity, resulting in a grave threat to the freedom of expression and to democracy itself; because the word "objectionable" in Section 230 is so ill-defined, vague and capacious that it results in systematic viewpoint-based censorship of political speech, rather than merely the protection of children from obscene or sexually explicit speech as was its original intent; because Section 230 purports to immunize social media companies for censoring speech on the basis of viewpoint, not merely content; because Section 230 has turned a handful of private behemoth companies into "ministries of truth" and into the arbiters of what information and viewpoints can and cannot be uttered or heard by hundreds of millions of Americans; and because the

legitimate interests behind Section 230 could have been served through far less speech-restrictive measures.

## COUNT THREE

## TORTIOUS INTERFERENCE WITH AN ADVANTAGE BUSINESS RELATIONSHIP

47.     Plaintiff obtained the Instagram account "lawyer" with the intention of marketing his law firm.

48.     Defendant deliberately interfered with Plaintiff's business by restricting Plaintiff's account and not allowing interaction with other users.

49.     Plaintiff thereby lost economic activity by having the account restricted and disallowing Plaintiff to interact with the userbase that Meta has established and generate income as a result. *Russo v. Nagel,* 358 N.J. Super. 245, 268 (App. Div. 2003).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Steven P. Haddad and the Class respectfully request that the Order, adjudge, and decree in favor of Plaintiff and the Class against the Defendants for:

A.     An award of Compensatory and Punitive damages to the Plaintiff in an amount to be of One Million Dollars.

B.     An injunction and declaratory judgment ordering Meta immediately to reinstate Plaintiff to their Meta accounts;

C.     An injunction and declaratory judgment ordering Facebook to remove its warning labels and misclassification of all content of the Plaintiff and to desist from any further warnings or classifications;

D.      Adjudgment declaring Sections 230(c)(1) and (c)(2) of the Communications Decency Act of 1996 unconstitutional;

E.      An award of attorneys' fees and costs to Plaintiff in an amount to be determined at trial; and

F.      An award of punitive damages to Plaintiff in an amount to be determined at trial.

G.      An award of such other and further relief as the Court may deem just and proper.

THE HADDAD LAW FIRM, PC
Attorneys for the Plaintiff

Michael S. Golner, Esq.

Dated: March 31, 2025